ATTORNEYS FOR APPELLANTS
Michael E. Simmons
Andrew P. Wirick
Hume Smith Geddes Green & Simmons, LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES
Susan E. Cline
Edward J. Fujawa
Lewis Wagner, LLP
Indianapolis, Indiana

# In the
# Indiana Supreme Court

FILED
Jun 02 2015, 10:29 am
CLERK
of the supreme court,
court of appeals and
tax court

No. 89S01-1502-CT-64

REBECCA STAFFORD, INDIVIDUALLY AND AS SURVIVING
    PARENT OF DRAYDEN POWELL, DECEASED, AND
DRAYDEN POWELL, DECEASED,                  *Appellants (Plaintiffs),*

v.

JAMES E. SZYMANOWSKI, M.D. AND
GYN, LTD., INC.,                           *Appellees (Defendants).*

Appeal from the Wayne Superior Court
The Honorable Gregory A. Horn, Judge
Cause No. 89D02-1209-CT-33

On Transfer from the Indiana Court of Appeals, No. 89A01-1401-CT-48

**June 2, 2015**

**Dickson, Justice.**

This appeal challenges entries of summary judgment in a medical malpractice action alleging negligence in the care and treatment of a patient during her pregnancy, resulting in the death *in utero* of her unborn child. We reverse the grant of summary judgment for the plaintiff's physician but affirm the grant of summary judgment for the clinic that provided her care.

Plaintiff Rebecca Stafford received prenatal medical care from physicians at GYN, a

medical clinic, from March to November 6, 2007, when her son Drayden was delivered stillborn. On June 2, 2009, Stafford filed a proposed complaint for medical malpractice with the Indiana Department of Insurance, pursuant to the procedure in the Indiana Malpractice Act, Indiana Code section 34-18-8-4. The complaint alleged that defendants Joseph B. Clemente, M.D., James E. Szymanowski, M.D., and GYN, Ltd., Inc. (collectively "the healthcare providers") "provided healthcare and medical treatment to Rebecca Stafford related to pregnancy and pre-natal care" and that such care and treatment was "careless, negligent and failed to comply with the appropriate standards of medical care and treatment required and/or expected of physicians and healthcare providers in the State of Indiana," resulting in injury to Stafford and the fetal demise of her unborn child, Drayden. Appellants' App'x at 24. Stafford amended her proposed complaint on October 23, 2009, to add Drayden as a named plaintiff with an independent claim for damages. In May 2012, a Medical Review Panel consisting of three medical doctors (the Panel) issued its unanimous expert opinion "that the evidence does not support the conclusion that the [healthcare providers] failed to meet the applicable standard of care" and further "that their conduct was not a factor of the resultant damages." *Id.* at 31.

Following the Panel's opinion, on August 3, 2012, Stafford, individually and as surviving parent of Drayden,[1] filed her complaint for medical malpractice before the trial court, alleging both medical negligence resulting in injury to herself as the patient and a claim for the wrongful death of her son Drayden as a child not born alive under the Child Wrongful Death Statute (CWDS), Indiana Code section 34-23-2-1. The healthcare providers filed a joint motion for summary judgment in September 2012, designating the Panel's opinion and asserting (a) that they were entitled to judgment as a matter of law because the patient had failed to establish a genuine issue of material fact that the healthcare providers breached the standard of care and caused injury and (b) that the CWDS claim was time barred. The patient responded in December and designated an affidavit by her expert witness, Gary Brickner, M.D. Reviewing the same records and materials previously tendered to the Panel, Dr. Brickner concluded that "the medical care and treatment rendered by Joseph B. Clemente, M.D., James E. Szymanowski, M.D. and GYN, Ltd., Inc., to Rebecca Stafford failed to comply with appropriate medical standards of

---

[1] For simplicity, for the remainder of this opinion, we refer to plaintiffs Stafford and Drayden collectively as "the patient."

2

care" for a number of reasons.  Appellants' App'x at 99.  The healthcare providers deposed Dr. Brickner the following June.  In July 2013, the healthcare providers filed a second motion for summary judgment, arguing any claim against a third physician not named as a party to the action, Joseph Smith, M.D, was time barred.  Following a hearing in November, on January 2, 2014, the trial court granted the healthcare providers' motions for summary judgment, ruling that there was no genuine issue of material fact as to Dr. Szymanowski and GYN,[2] and to the extent relevant, Dr. Smith.  The Court of Appeals affirmed.  Stafford v. Szymanowski, 13 N.E.3d 890, 899 (Ind. Ct. App. 2014).  We granted transfer and now reverse in part and affirm in part.

On appeal, the patient contends that the trial court improperly entered summary judgment in favor of Dr. Szymanowski and GYN as well as improperly rejected the claim for damages for the death of Drayden under the CWDS.

When reviewing a summary judgment decision, our well-settled standard is the same as it is for the trial court: summary judgment is appropriate where "the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Trial Rule 56(C), *cited in* Ind. Univ. Med. Ctr., Riley Hosp. for Children v. Logan, 728 N.E.2d 855, 858 (Ind. 2000).  We construe all evidence in favor of and resolve all doubts as to the existence of a material issue in favor of the non-moving party. Logan, 728 N.E.2d at 858.  Generally, "[u]nder Indiana summary judgment procedure, a non-movant is not required to come forward with contrary evidence until the party seeking summary judgment demonstrates the absence of a genuine issue of material fact."  Kennedy v. Murphy, 659 N.E.2d 506, 508 (Ind. 1995) (citing Jarboe v. Landmark Cmty. Newspapers, Inc., 644 N.E.2d 118, 123 (Ind. 1994)).  In medical malpractice cases, however, a unanimous opinion of the medical review panel that the physician did not breach the applicable standard of care is ordinarily sufficient to establish prima facie evidence negating the existence of a genuine issue of material fact entitling the physician to summary judgment.  Boston v. GYN, Ltd., 785 N.E.2d 1187, 1191 (Ind. Ct. App. 2003), *trans. denied*; *see* Kennedy, 659 N.E.2d at 508; Culbertson v. Mernitz, 602 N.E.2d 98, 104 (Ind. 1992).  Consequently, in such situations, the burden shifts to

---

[2] Prior to the trial court's ruling on the motion for summary judgment, Dr. Clemente was voluntarily dismissed with prejudice as a party from the action.

3

the plaintiff, who may rebut with expert medical testimony. *Id.*

## Dr. Szymanowski

To rebut the Panel's unanimous decision that Dr. Szymanowski met the appropriate standard of care, the patient relies upon the expert medical testimony of Dr. Brickner. Specifically, the patient points to Dr. Brickner's affidavit providing multiple reasons why the medical care and treatment of the healthcare providers—including but not specifically mentioning Dr. Szymanowski—failed to comply with appropriate standards of care. The patient also points to Dr. Bricker's deposition, where Dr. Brickner expounded further upon the failure of the healthcare providers, specifically mentioning Dr. Szymanowski and emphatically focusing on November 1, 2007, as the day a biophysical exam was performed or interpreted incorrectly and as the last opportunity to correct mistakes made at two previous appointments:

> [T]he issue here is not the performance of the biophysical, the issue is the absence of additional testing. I have no problem with them doing a biophysical. That wasn't the issue in this case. Although I suspect that the biophysical may have been misinterpreted, given the eventual outcome. My basic criticism of the care is that it was the only test done on that patient, which given her presenting situation that day . . . was insufficient as a way of assuring fetal well-being.

Deposition of Gary R. Brickner, M.D. at 91–92, 135–36, Appellants' App'x at 137, 148. The healthcare providers contend Dr. Brickner's affidavit fails to establish a genuine issue of material fact as to the allegation against Dr. Szymanowski because "the allegations contained in the affidavit were not directed toward any named defendant in particular, but were couched in general terms without associating any of the [healthcare providers] with the claimed breaches of the standard of care." Appellees' Br. at 14. With respect to Dr. Brickner's deposition, the healthcare providers challenge Dr. Brickner's attribution of alleged breaches of the standard of care and point out instances where Dr. Brickner qualified his earlier opinions.

Construing the facts and reasonable inferences in favor of the patient as the non-moving party, as we must, we find the designated medical expert's affidavit and deposition competent evidence establishing a genuine issue of material fact that Dr. Szymanowski breached the standard of care in his treatment of Stafford. Although, as the healthcare providers point out, the record is less

4

conclusive on which physician personally performed the disputed biophysical on November 1,[3] reasonable inferences from Dr. Brickner's deposition suggest that Dr. Szymanowski was the admitting physician in charge of supervising Stafford's care that day, as the passages (in chronological order) demonstrate below. The first and third passages establish Dr. Szymanowski's admitting/supervisory role on November 1, and the second shows equivocation only about whether Dr. Szymanowski *personally* performed the biophysical profile or delegated it to an ultrasound tech:

> Q. Now, moving onto . . . your Affidavit, it says, "On November 1, a biophysical profile was performed which, if performed properly, should have predicted the chances of fetal survival for up to a week thereafter. . . . there is medical reason to believe that the biophysical profile was performed, or interpreted, improperly.
>
> Who provided care to Rebecca Stafford on November 1, 2007?
>
> A. I believe we've established that it was Dr. Clemente. Dr. Clemente I believe we've established that. I can't read—I can't read—
>
> Q. I believe we established it was Dr. Szymanowski.
>
> A. I'm sorry, Dr. Szymanowski. It was not Dr. Clemente, it was Dr. Szymanowski. My apologies.
>
> Q. Okay. To your knowledge, or can you tell from the record, was any other healthcare provider of GYN, Limited involved in her care on that day?
>
> A. Not to my knowledge, no.
>
> Q. Is it fair, then, for me to conclude that your opinions as to a breach in the standard of care on November 1st are directed to Dr. Szymanowski only?
>
> A. At this point, yes. At this time, yes.

Deposition of Gary R. Brickner, M.D. at 87–88, Appellants' App'x at 136.

> Q. Is it your understanding that the biophysical profile was performed by Dr. Szymanowski?
>
> A. It's not clear from the records. I don't know who performed it. Though *he noted them,* I'm not able to find any form where he was listed, other than the flow sheet.

---

[3] On transfer, the defendants argue for the first time that "Dr. Brickner's own confused testimony can[not] create a genuine issue of material fact," asserting that "[a] witness cannot create a genuine issue of material fact by providing his own contradictory testimony." Br. in Response to Trans. Pet. at 5. By failing to present this issue on direct appeal, the defendants are procedurally defaulted from raising it here. Bunch v. State, 778 N.E.2d 1285, 1289 (Ind. 2002). Further, the alleged contradictory testimony was from Dr. Brickner, not from the plaintiff patient as non-moving party seeking to create an issue of fact. *See* Smith v. Delta Tau Delta, Inc., 9 N.E.3d 154, 159 (Ind. 2014) (citing Gaboury v. Ireland Rd. Grace Brethren, Inc., 446 N.E.2d 1310, 1314 (Ind. 1983)).

Q. So you're unaware if he was actually doing it or if he was doing it *in conjunction . . . with* an ultrasound tech?

A. I'm only aware of the results. I do not know who performed it or even when it was performed, actually. I'm assuming it was performed that day, but I'm not certain of that either.

*Id.* at 106, Appellants' App'x at 141 (emphases added).

Q. Dr. Szymanowski's care was provided on November 1st, and based upon our discussion, that's been the focus of a lot of your criticism, correct?

A. Yes.

Q. What is it about the GYN, Limited—how did GYN, Limited fail [the patient]?

A.  My assumption in writing was that GYN, Limited was the umbrella organization under which these doctors practiced, so in that respect. . . . [M]y comments were directed towards the three physicians and the entity, in terms of, as a group, as an entity, they had failed to meet the standard of care. . . .

Q. You mentioned three physicians, and we have just Dr. Clemente and Dr. Szymanowski listed independently. Who is the third physician; is that Dr. Smith?

A. Yes.

Q. And Dr. Smith is not named as a defendant in this case, is he?

A. I don't know. I mean, under GYN, Limited, I don't know what that encompasses, whether he's brought into the case in that way or not.

*Id.* at 122–24, Appellants' App'x at 145.

The healthcare providers also point out instances where Dr. Brickner qualified his earlier statements, acknowledging, for example, that Stafford was sent home on November 1 with instructions to report any decreased fetal movement.  As long as competent evidence has been designated in response to a summary judgment motion, however, "weighing [the evidence]—no matter how decisively the scales may seem to tip—[is] a matter for trial, not summary judgment." Hughley v. State, 15 N.E.3d 1000, 1005–06 (Ind. 2014).  Finding a genuine issue of material fact regarding Dr. Szymanowski's negligence raised by the patient's designated expert medical testimony, we reverse the grant of summary judgment for Dr. Szymanowski.

**Vicarious Liability of GYN**

The patient also contends that the trial court improperly entered summary judgment in

6

favor of GYN with respect to the theory that GYN is vicariously liable as principal for the acts and omissions of both its agents Drs. Szymanowski and Smith. To support her agency relationship theory, the patient points to the defendants' brief in support of second motion for summary judgment, the defendants' submission to the Panel (plaintiff's designated Exhibit A), and the deposition of Dr. Brickner (plaintiff's designated Exhibit F)—instances where the defendants referred to Drs. Szymanowski and Smith as "colleagues," Dr. Smith as "a partner in GYN," and GYN as a "group of . . . physicians." Appellants' App'x at 251 n.2, 269, 271; *see* Appellants' App'x at 127. The patient also points to her designated Exhibits B (Stafford's medical records with a GYN logo and a list of doctors including Drs. Szymanowski and Smith), C (notice from the Indiana Department of Insurance), D (printout of the Indiana Secretary of State's website listing GYN as a for-profit domestic corporation with Dr. Smith as its registered agent), and E (correspondence from the Indiana Department of Insurance).

The trial court, however, correctly found the patient's designated evidence insufficient to establish a genuine issue of fact regarding an agency relationship between GYN and either Dr. Szymanowski or Dr. Smith. Summary judgment should be granted only if the designated evidence authorized by Indiana Trial Rule 56(C) shows that there is no genuine issue of material fact. *See* Logan, 728 N.E.2d at 858. "Unsworn statements and unverified exhibits do not qualify as proper Rule 56 evidence." *Id.*, *quoted in* Smith v. Delta Tau Delta, Inc., 9 N.E.3d 154, 159 (Ind. 2014). The trial court struck the patient's designated Exhibits B, C, and D as "unsworn, uncertified, and unauthenticated"—a decision not appealed. Appellants' App'x at 308. Defense statements in the patient's designated Exhibits A and F are also unsworn and inadmissible. *See* Logan, 728 N.E.2d at 858 n.2 (noting uncertified documents and unsworn statements, including unsworn submissions to the medical review panel and uncertified medical records, were inadmissible and not proper Rule 56 evidence); *see also* Auto-Owners Ins. Co. v. Bill Gaddis Chrysler Dodge, Inc., 973 N.E.2d 1179, 1182–83 (Ind. Ct. App. 2012) (noting uncertified and unauthenticated exhibits, including copies of pages printed from the Bureau of Motor Vehicles website, were not proper Rule 56 evidence), *trans. denied*. Further, the patient's designated Exhibit E, does not mention either Dr. Szymanowski or Dr. Smith in connection with GYN. Finally, none of the portions of Dr. Brickner's deposition (Exhibit F) designated by plaintiff support the existence of an agency relationship. Because we find no properly designated evidence showing an

7

agency relationship between GYN and Drs. Szymanowski and Smith, we affirm the trial court on this issue.

## Conclusion

Finding a genuine issue of material fact as to whether Dr. Szymanowski breached the standard of care in his treatment of patient but no properly designated evidence establishing vicarious liability as to GYN, we reverse the grant of summary judgment for Dr. Szymanowski but affirm the grant of summary judgment for GYN. As to the claim for damages under the CWDS, we summarily affirm the Court of Appeals. Ind. Appellate Rule 58(A).

Rush, C.J., and Rucker, David, and Massa, JJ., concur.